# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| LUIS TORRES,<br>    *Plaintiff*,<br><br>v.<br><br>CARSON WRIGHT, *et al*.,<br>    *Defendants*. | No. 3:17-cv-01919 (JAM) |

## ORDER OF DISMISSAL PURSUANT TO 28 U.S.C. § 1915A

Plaintiff Luis Torres is a prisoner in the custody of the Connecticut Department of Correction. He has filed a complaint *pro se* and *in forma pauperis* under 42 U.S.C. § 1983 against Dr. Carson Wright, the Connecticut Department of Correction, Warden William Mulligan, Deputy Warden Derick Molden, Captain Gregorio Robles, Jr., and Nurse Vicki Scruggs. He alleges various constitutional and statutory violations based on the lack of an operable emergency call button in his cell. Plaintiff is suing all defendants in their individual and official capacities. After initial review, I conclude that plaintiff has not alleged any plausible claims for relief and will dismiss the complaint.

### BACKGROUND

The following facts are alleged in the complaint and are accepted as true only for purposes of this initial ruling. At the time of the events which gave rise to this complaint, plaintiff was housed at Northern Correctional Institution in a cell that had a non-operable emergency call button. Plaintiff was concerned that the lack of an operable intercom button would hinder his ability to access care in the event of a medical emergency. In February or March of 2017, plaintiff expressed his concerns about the non-operable button to defendants Robles, Mulligan, and Molden. The officials responded that plaintiff did not need a working call

1

button because nothing was going to happen to him and that a working call button was not required by the administrative directives. They also told him that they did not care whether the call button worked and threatened him with disciplinary action and punitive segregation for "refusing housing" if he did not remain housed in his cell. Doc. #1 at 7-8 (¶¶ 16-17).

Plaintiff subsequently filed grievances regarding the call button in his cell. In response, defendants Mulligan, Molden, and Robles told him that the availability of an in-cell emergency call button was not required to meet his needs. Mulligan further stated that he was aware that plaintiff's call button was not working. Plaintiff alleges that none of his grievances were answered. When plaintiff inquired further regarding fixing the call button, Mulligan threatened to place him in punitive segregation and issue a disciplinary report against him. *Id.* at 8 (¶¶ 18-19).

On March 3, 2017, Robles informed plaintiff that he was going to move into a cell with inmate Jose Aviles. Plaintiff protested that he was supposed to be housed alone. Aviles also protested to Robles and stated that he has problems with cellmates and had assaulted cellmates in the past. Aviles further explained that a judge had recommended that he be housed alone and that a social worker wrote a letter indicating the danger of placing him with a cellmate. Nonetheless, Robles, along with two correctional officers, moved plaintiff into a cell with Aviles. *Id.* at 8-9 (¶ 20).

Three days later, on March 6, Aviles asked Robles about a letter he had sent to Molden demanding the return of his personal property and threatening to hurt his cellmate if his property was not returned. Robles yelled at Aviles that he was never going to get his property back. Later that afternoon, a correction officer gave Aviles and plaintiff razors to shave their faces, but did not supervise either inmate's use of the razor. While plaintiff was shaving, Aviles attacked him with his razor, slashing his arms, legs, chest, neck, back, and other parts of his body. Plaintiff

pressed the emergency call button but the button was not working. After being assaulted by Aviles, plaintiff developed post-traumatic stress disorder. He also has an unspecified disability for which he takes Clonodine and Elavil, medications he states cause severe side effects. *Id.* at 9-11 (¶¶ 21-23, 28).

On March 10, medical staff sent plaintiff back to the housing unit. Robles placed plaintiff in a different cell that also had an inoperable emergency call button. On May 5, plaintiff realized that the button was inoperable and informed Robles, Mulligan, Molden, and Scruggs that he needed a working call button and that he had almost gotten killed after the Aviles attack due to the inoperable button. Robles, Mulligan, and Molden said that they would send maintenance staff to fix the problem. Scruggs told plaintiff that there was nothing she could do because the call button was a "custody issue." *Id.* at 10-11 (¶¶ 24-26)

Plaintiff also alleges that Dr. Wright was informed of the defective button at some point, and both he and Nurse Scruggs failed to order custody officials to move him to a different cell with an operable button. The button was never fixed. Plaintiff states that he remains under threats of discipline if he refuses to be housed without a working call button. He does not specify when or by whom these threats were issued. *Id.* at 13-14 (¶ 36).

## DISCUSSION

Pursuant to 28 U.S.C. § 1915A, the Court must review a prisoner's civil complaint against a governmental entity or governmental actors and "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint—(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." If the prisoner is proceeding *pro se*, the allegations of the complaint must be read liberally to raise the strongest arguments that they suggest. *See*

3

*Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010).

In recent years, the Supreme Court has set forth a threshold "plausibility" pleading standard for courts to evaluate the adequacy of allegations in federal court complaints. A complaint must allege enough facts—as distinct from legal conclusions—that give rise to plausible grounds for relief. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Notwithstanding the rule of liberal interpretation of a *pro se* complaint, a *pro se* complaint may not survive dismissal if its factual allegations do not meet the basic plausibility standard. *See, e.g.*, *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015).[1]

### *Duplicative claims*

As a matter of judicial discretion, a court may dismiss in whole or in part an action that is duplicative of another, previously filed suit. *See Curtis v. Citibank, N.A.*, 226 F.3d 133, 138 (2d Cir. 2000). The reason for this rule is that "plaintiffs have no right to maintain two actions on the same subject in the same court, against the same defendant at the same time." *Id.* at 139. Courts may address duplicative lawsuits in several ways, including by dismissing the later-filed case. Similarly, a court may dismiss "a single duplicative claim lodged within a lawsuit containing additional non-duplicative claims as well." *Flemming v. Smith*, 2014 WL 4829526, at *6 (N.D.N.Y. 2014) (citing *Taylor v. Rodriguez*, 238 F.3d 188, 197 (2d Cir. 2001)).

Plaintiff in this case had a lawsuit pending before this Court, *Torres v. Morris*, 3:17-cv-

---

[1] The Court limits its review for purposes of 28 U.S.C. § 1915A to federal law claims. That is because the core purpose of an initial review order is to make a speedy initial screening determination of whether the lawsuit may proceed at all in federal court and should be served upon any of the named defendants. If there are no facially plausible federal law claims against any of the named defendants, then the Court would decline to exercise supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. § 1367. On the other hand, if there are any viable federal law claims that remain, then the validity of any accompanying state law claims may be appropriately addressed in the usual course by way of a motion to dismiss or motion for summary judgment. *See Hamlin v. City of Waterbury, et al.*, 2017 WL 4869116, at *1 n.1 (D. Conn. 2017).

01144 (JAM). In that suit, plaintiff alleged various claims arising from his placement in a cell with Jose Aviles and the subsequent attack. *See id.* at Doc. #1 at 6-9. Plaintiff was represented by counsel in that action, and the matter was resolved by means of a negotiated settlement. *See id.* at Doc. #28. Accordingly, any claims in the instant lawsuit that arise from the incident with inmate Aviles are dismissed as duplicative.

### *Americans with Disabilities Act and Rehabilitation Act*

Plaintiff claims a violation of the Americans with Disabilities Act (ADA) and the Rehabilitation Act. Plaintiff alleges at various points in his complaint that he has PTSD and another unspecified and undescribed disability than hinders his functioning. Doc. #1 at 10 (¶ 23). But he does not allege any facts to suggest that any of the defendants he has named denied him an accommodation or other benefit because of his alleged PTSD or other unnamed disability. *See Wright v. New York State Dep't of Corr.*, 831 F.3d 64, 72 (2d Cir. 2016) (discussing identical elements of ADA and Rehabilitation Act claim in prison context). Plaintiff's complaint is that he does not have an emergency call button, not that any PTSD or other disability prompted any of the defendants to discriminate against or disadvantage him. Furthermore, "neither the ADA nor the Rehabilitation Act applies to claims regarding the quality of medical services provided by correctional departments or provide a remedy for medical malpractice." *Montgomery v. Dep't of Corr.*, 2017 WL 5473445, at *2 (D. Conn. 2017) (holding that plaintiff failed to state a claim under ADA for housing him in a cell with a non-working emergency call button). Accordingly, plaintiff has not alleged a plausible claim for relief under the ADA or Rehabilitation Act.

### *Eighth Amendment Claims*

Plaintiff claims that defendants violated his Eighth Amendment rights against cruel and unusual punishment by being deliberately indifferent to his serious medical needs, failing to

protect him from harm, and subjecting him to unconstitutional conditions of confinement. All of these claims rest on the failure to provide an operable emergency call button that exposed plaintiff to great risk of harm in the event of a medical emergency. Plaintiff further alleges that this failure constitutes "deliberate indifference" in violation of his rights under the Fourth and Fourteenth Amendments. Doc. #1 at 8 (¶ 18). He also alleges this constitutes "unwanton infliction of pain as well as cruel and unusual punishment" under the Fifth and Fourteenth Amendments. *Id.* at 13 (¶ 34). It is well established that a prisoner's post-conviction claim regarding prison conditions or lack of medical care is evaluated exclusively under the Eighth Amendment. Accordingly, I will evaluate plaintiff's various claims based on the lack on emergency button under the framework of the Eighth Amendment.

The Supreme Court has held that a prison official's "deliberate indifference" to a prisoner's serious medical needs amounts to a violation of the Eighth Amendment. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976). The Second Circuit in turn has made clear that a prisoner who claims deliberate indifference to a serious medical need must satisfy two requirements. First, there is an *objective* requirement—that the prisoner's medical need was sufficiently serious. *See Spavone v. New York State Dep't of Corr. Serv's.*, 719 F.3d 127, 138 (2d Cir. 2013). The prisoner must show that he suffered from an urgent medical condition involving a risk of death, degeneration, or extreme pain. *See Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011).

Second, there is a *subjective* requirement: that the defendant have acted recklessly—that is, with an actual awareness of a substantial risk that serious harm to the prisoner would result from the defendant's action or non-action. *See Spavone*, 719 F.3d at 138. It is not enough to allege simple negligence or negligent medical malpractice. *See Hilton v. Wright*, 673 F.3d 120, 122-23 (2d Cir. 2012); *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996). Instead, a

6

prisoner must show that the defendant acted with the equivalent of a criminally reckless state of mind when denying treatment for the prisoner's medical needs. *See Collazo v. Pagano*, 656 F.3d 131, 135 (2d Cir. 2011) (*per curiam*).

Although plaintiff alleges that he has PTSD and takes several medications for unnamed conditions, he does not show that he suffered from an urgent medical condition that required access to an emergency call button. Plaintiff does not allege any facts that give rise to a plausible inference that his PTSD required a working emergency call button, that he has ever been deprived of any medical care as a result of the defective call button, or that the lack of the button exposed him to serious risk of harm or pain. Nor did plaintiff plead facts raising an inference that the defendants were reckless with respect to the serious harm that would result from the lack of an operable emergency button. Accordingly, plaintiff has not satisfied either the objective or subject prongs of the deliberate indifference to serious medical needs test.

Plaintiff also appears to allege that by failing to provide an operational emergency call button defendants failed to protect him from harm or were deliberately indifferent to his safety, caused wanton infliction of pain, imposed cruel and unusual punishment, and subjected him to unconstitutional conditions of confinement all in violation of the Eighth Amendment. Prison officials have a duty to make reasonable efforts to ensure inmate safety. To establish a constitutional violation, a plaintiff must show that the conditions of his incarceration posed a substantial risk of serious harm and that prison officials were deliberately indifferent to his safety. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

As described above, the failure to provide an operable emergency button did not pose a substantial risk of serious harm to plaintiff. *See Montgomery*, 2017 WL 5473445, at *3 (non-operative emergency call button not a violation of the Eighth Amendment). Prisoners do not

have an Eighth Amendment right to a cell equipped with an emergency call button. Accordingly, I will dismiss all of plaintiff's claims arising under the Eighth Amendment.

*First Amendment Retaliation*

To state a claim for First Amendment retaliation, a plaintiff must allege "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected [conduct] and the adverse action." *Holland v. Goord*, 758 F.3d 215, 225 (2d Cir. 2014). "Only retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action for a claim of retaliation." *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003). Further, courts must treat prisoner retaliation claims "with skepticism and particular care, because virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act." *Id.* at 352 (internal quotations and citation omitted); *Dorsey v. Fisher*, 468 F. App'x 25, 27 (2d Cir. 2012).

Plaintiff complains of several instances of retaliation. First, he claims that Robles, Mulligan, and Molden retaliated against him for complaining about the defective call button by threatening him with disciplinary action and punitive segregation for "refusing housing" if he did not remain housed in his cell. Doc. #1 at 7-8 (¶¶ 16-17). Plaintiff also alleges that Mulligan retaliated against him for filing grievances regarding the call button by threatening to place him in punitive segregation and issue a disciplinary report against him if he did not stop complaining about the matter. *Id.* at 8 (¶¶ 18-19). Plaintiff finally claims that he remains under threat of discipline if he refuses his housing assignment.

Regarding the first alleged instance of retaliation, it is doubtful whether the speech that plaintiff engaged in was constitutionally protected. A verbal complaint "to correctional staff is not protected activity of the type necessary to support a retaliation claim." *Montgomery*, 2017 WL 5473445, at *4. "Refusing a housing assignment" is similarly not activity protected by the Constitution. *Ibid.*

It is true that "filing of prison grievances" is generally activity protected by the First Amendment. *Gray v. Open Hearth Ass'n*, 2017 WL 3401251, at *4 (D. Conn. 2017). (citation omitted). But plaintiff has not adequately alleged that any defendant took adverse action against him. Plaintiff does not allege that he was ever actually subject to disciplinary action or punitive segregation in relation to his call button complaints. A verbal threat may sometimes constitute adverse action. *See, e.g.*, *Hepworth v. Suffolk Cty.*, 2006 WL 2844408, at *8 (E.D.N.Y. 2006) (material dispute of fact whether verbal threats that plaintiff would be beaten or killed if he filed a grievance constituted adverse action). But "the threat to place plaintiff in protective custody is *de minimis* and does not constitute an adverse action." *Islam v. Goord*, 2006 WL 2819651, at *5 (S.D.N.Y. 2006); *Montgomery*, 2017 WL 5473445, at *4 (same). Accordingly, I find that the alleged threats to discipline plaintiff do not constitute adverse action, and I will dismiss plaintiff's First Amendment retaliation claims.

### *Miscellaneous Claims*

Aside from the claims discussed above, plaintiff asserts claims under the Tenth Amendment and the Equal Protection Clause of the Fourteenth Amendment. The Court has evaluated these claims and finds them all to be without merit. *See also Montgomery*, 2017 WL 5473445, at *5 (D. Conn. 2017) (rejecting identical claims that the lack of an operable call

button in plaintiff's cell violated the Tenth Amendment and Equal Protection Clause of the Fourteenth Amendment).

*State Law Claims*

Plaintiff also alleges a host of state law claims. Since I have dismissed all of the federal law claims in the complaint, I declines to exercise supplemental jurisdiction over plaintiff's state law claims. *See* 28 U.S.C. § 1367(c)(3).

## CONCLUSION

Plaintiff has failed to allege any plausible claim for relief against any of the defendants. Because the case is subject to dismissal for failure to state a claim, plaintiff's requests for a preliminary injunction and prejudgment remedy are denied as moot. The Clerk of Court shall close this case.

It is so ordered.

Dated at New Haven this 6th day of March 2018.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge